Curia, per

Butler, J.
The only question involved in this case, upon which it is the design of the court to deliver its judgment, should rest on a distinct statement of unquestioned facts, unconnected with irrelevant circumstances.. The plaintiff’s slave, endued with ordinary intelligence, and acquainted with the nature and manner of using the Rail Road, voluntarily laid himself down on it and went to sleep, amidst grass so high as to obstruct the view at some distance over twenty feet ahead. In this situation, without any fault of the engineer, the engine going at its ordinary speed, passed over and killed the slave. There are two causes which may have contributed to this result. The first is the grass being so high as in some measure to obstruct the view of the engineer, and thereby preventing him from guarding against accidents as effectually as he otherwise might have done; and the second, that of the boy voluntarily and with reckless imprudence placing himself in danger, so as to bring upon himself the catastrophe. The one was a remote source of danger and could not be regarded as the proximate or necessary cause of the *406 accident, for the engine might have run over the boy notwithstanding the high grass, as from the situation of the body it might not have been seen by the engineer until it was too late to stop the engine in its rapid progress. The other cause was immediate and necessary; for unless the boy had lain down on the road he would not have been hurt. This proposition then presents itself — should the company be held liable for an injury to a slave or other rational person, when there is no fault imputable to the engineer having direction of the locomotive, and when such person with voluntary imprudence places himself in a situation of danger 7 It seems to me that it would be a hard rule of law, repugnant to common notions of justice, that would require the court to support the affirmative of this proposition. It would be to make the company not only liable for its own negligence, but for injuries arising from the fault and imprudence of others, and they strangers, too, in no wise connected with the employment of the company. If one were to put on the road a parcel of goods, and they were to be destroyed by the cars running over them without fault of the engineer, could such an one recover damages of the company % I think not. So far from it, the party would be liable to an indictment for obstructing the road. Suppose another case — that a white man should go to sleep with a leg on the road, and that his leg should be broke, under any imaginable circumstances preventing the engineer from seeing it at the time, could such white man take advantage of his own foolish imprudence to make the company liable for the injury he had sustained'? If so, the next step would be to make the company liable for all injuries which persons may sustain arising from their own rashness and want of foresight. One might recover because his horse ran away and threw him in consequence of the animal becoming frightened at the cars. And in this way the company would be deprived of all benefit of their road, by being liable for damages to those who will not take care of themselves. It is supposed, however, that the owner may recover for an injury toa slave, when he could not recover for an injury to himself. I cannot well see the propriety or justice of this distinction. A slave is regarded as a chattel, but not such a chattel as brute animals., *407 that have not intelligence' to enable them to understand and conform to human arrangements of the nature of Rail Roads. These latter may go on the road without knowing their danger, and have nothing higher than instinct to direct them in attempting to escape from it. With good reason, therefore, should the company be held liable for injuries done to them. The defect of the brute must be regarded and supplied by the agents of the company- — that is, where it goes into danger of its own accord; but when it is put in danger by the voluntary design of the owner, the owner ought not to be allowed to convert his own act into a cause of action. In this respect a slave is like his owner; he is a moral being of volition and intelligence, capable, by his foresight, of avoiding danger, or of extricating himself from it by consulting his reason. In regard to the liability of common carriers, the difference between slaves and other chattels has been fully recognized by our courts. In the case of McDonald vs. Clark, 4 McC. 225, the distinction is taken. Slaves are there regarded as other passengers, who, amidst the dangers of a wreck, may consult their own reason to extricate themselves from it. Judge Johnson remarks — “ There is then a radical difference between the liability of a carrier with respect to the transportation of a slave, and a bale of goods. The latter has neither the power of volition or motion, and is completely under his control. The former is operated on by moral causes; the latter only by physical.” This remark suggests a distinction which may well obtain with regard to the liability of the Rail Road Company to those whom they may have in charge as passengers or in their employment, and mere strangers. The former have a right to look to the company to take care of them by the exercise of competent skill and reasonable prudence. Whilst the company would have a right to suppose that the latter would take care of themselves, or - at least would not voluntarily put themselves in a dangerous situation. The duty of giving attention to one, does not extend to the others whose ob-trusions would be calculated to lead to surprise and confusion. The law very wisely requires every one to rely on his own prudence; and he should.consult that before he undertakes to take advantage of the faults of others. The *408 case of Butterfield vs. Forrister, 11 East, 60, is decided on this view of the subject. It appeared in that case that the defendant, for the purpose of making some repairs to his house, which was close to the road side, had put up a pole across that part of the road, a passage being left by another passage, (fee. The plaintiff left a public house not far from the place in question, at 8 o’clock in the evening, in August, when they were just beginning to light candles, but while there was light enough to discern the obstruction at 100 yards distance, and which the plaintiff might have observed and avoided; the plaintiff, however, who was riding violently, did not observe it, but rode against it and fell with his horse, and was much hurt in consequence of the accident. Under these circumstances the jury found for the defendant, by the direction of the presiding Judge. On a motion for a new trial the verdict was confirmed. The judgment of Lord Ellenborough is full of good sense when he says, “ A party is not to cast himself on an obstruction, which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right. One person being in fault will not dispense with another using ordinary care for himself. Two things must concur to support this action — an obstruction in the road, by the fault of the defendant, and a want of ordinary care to avoid it on the part of the' plaintiff.” To the same purport is the case of Flown vs. Adam, 2 Taunt. 314. According to these views, the plaintiff had no right to avail himself of the omission of defendants to cut the grass down, when it appeared that his slave’s own imprudence was the primary and proximate cause of his death. As the facts upon which the judgment of the court is based, seem to be unquestioned, it would be useless to send the case back for a new trial. A nonsuit is therefore ordered.
Richardson, Evans and Earle, JJ., concurred.
O’Neall, J. I dissent, on the ground on which the case was decided below.